person and means of support not being now in question; and we are of opinion that the plaintiff had no property which was injured. The judgment should be affirmed, with costs.

---

### HERDMAN v. NEW YORK, L. E. & W. R. CO.

*(Supreme Court, General Term, Third Department. December 28, 1891.)*

1. CARRIERS—INJURY TO PASSENGER—CONTRIBUTORY NEGLIGENCE—EVIDENCE.
    Plaintiff's intestate was in the habit of returning, every evening, to his home, on defendant's train. On the evening of his death, during broad daylight, as the train was approaching his home station, at a speed of about 20 to 40 miles an hour, deceased rose from his seat, and went to the rear platform of the car, and when 900 feet distant from the station, either voluntarily stepped from the platform, or was thrown therefrom by the momentum of the train, and killed. *Held,* that the acts of deceased constituted negligence *per se,* and that the court properly refused to submit the question of the existence of contributory negligence to the jury.

2. SAME—FALLING OFF PLATFORM—WANT OF BRAKEMAN.
    The fact that there was no brakeman on that end of the car to stop deceased, if he attempted to step from the platform, was not negligence on the part of defendant; it being no part of a brakeman's duty to prevent men from standing on the platform, nor to catch them when they jump off or fall off.

3. PREMATURE ANNOUNCEMENT OF ARRIVAL AT STATION.
    The question whether defendant's brakeman did or did not prematurely announce the arrival of the train at intestate's station was immaterial, he being familiar with the station, and knowing the fact that the train was accustomed to stop there.

Appeal from circuit court, Sullivan county.

Action by Mary E. Herdman, administratrix of George A. Herdman, deceased, against the New York, Lake Erie & Western Railroad Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before LEARNED, P. J., and MAYHAM and KELLOGG, JJ.

*John W. Lyon,* for appellant. *Lewis E. Carr,* for respondent.

KELLOGG, J. This action is brought to recover, upon a cause of action given by a statute of the state of Pennsylvania, alleged and admitted to be in all respects similar to the statute of this state, for the death of plaintiff's intestate through the negligence of defendant. At the close of plaintiff's case the trial court, on motion of defendant, directed a dismissal of the complaint for failure to present evidence sufficient to warrant a verdict determining that the deceased was free from negligence, and the cause of the accident was attributable to any negligence on the part of the defendant. The deceased was a passenger on defendant's passenger train. When near the station of Shohola, Pa., and about 900 feet away, the deceased stepped off, or fell off, the rear platform of the smoker, and was killed. Just how the accident occurred does not clearly appear. Whether the deceased deliberately stepped off the train, or accidentally fell off, aided by the motion of the train, the evidence does not disclose. The train, at the time, was moving at its usual rate of speed, from 20 to 40 miles an hour. A passenger named Lawrence, in the coach in the rear of the smoker at the time, says: "He was coming out of the smoking-car, and came across on the front end of the car that I was on. I was on the next car to the smoker, and he disappeared." Another witness named Everly, standing at his shop, about 500 feet, says: "He was standing on the rear platform of the smoking-car when I saw him first. Next I saw him fall and drag. * * * He had hold of the railing, and was dragged 3 or 4 rods, I think." The only other witness who speaks of the occurrence is Timothy Welch, the conductor of the train, plaintiff's witness, and he gives perhaps the only evidence which conveys any impression of just what did occur. He says: "When I first saw Herdman [deceased] he was on the steps of the smoking-car, fixing himself to get off. He was preparing to get off when I first saw him. When I first saw him he had hold of the railing, and

was letting himself down, as I was coming out of the ladies' car door, and I hallooed to him, and sprang to him at the same time, and before I could get to him his feet had got on the ground, and the result was he was dragged. I reached to catch him, and my brakeman went down on the steps of the ladies' car, and we reached to catch him, and before we could catch him he had let go. * * * I had not seen anything of the man before that, after I left the smoker, until I saw him then. I saw him in the smoker when I took up the tickets. He was in the third or fourth seat from the front end of the car, on the right-hand side. The car is 45 to 60 feet long. * * * There had been no announcement of the station, Shohola, in the smoking-car, up to the time I saw the man upon the steps." One witness testified that the station had been announced in the ladies' car before the accident. No one testifies to contradict the conductor that no announcement had been made in the smoker.

Some effort was made by plaintiff to show that the track was out of repair. The workmen were seen a few days before the accident, in this neighborhood, removing cinders between the ties, and replacing stone ballast. The evidence on this subject wholly fails to convey the impression that the track was not in good condition, or that the motion of the car was unusual or unsafe, or that there was any defect in the track or road-bed which contributed or could contribute to the accident, the fall of plaintiff's intestate, or his death. The deceased was familiar with this train, the road, and this station. The accident occurred on Saturday evening, while it was light. During the week, every morning, he took this train at this station, and returned on this train to this station every evening. He could see from his seat in the front end of the smoker that the train was approaching Shohola station. He knew it had not slackened its speed. He knew abundant time would be afforded him to alight when the station was reached. Instead of waiting for the train to stop, he voluntarily walked back through the car, and, if what plaintiff's witness, the conductor, says is truthful, he deliberately undertook to alight 900 feet away from the station, from a train moving at the rate of 20 to 40 miles an hour. Even if the theory were accepted that, while standing on the platform of the car, the deceased, from the motion of the car, lost his balance and fell, still the deceased could not be regarded as free from contributory negligence. He left a place of safety provided by defendant, and took his dangerous position, voluntarily. He was driven by no necessity; he had full knowledge of the situation,—full knowledge that the defendant could afford him no protection beyond what was plainly to be seen. No court has yet gone so far as to hold that such acts, under such circumstances, do not constitute negligence *per se*. To leave it to a jury to say that such acts, under such circumstances, do not constitute negligence, would be to throw away the best understood legal principle, and substitute in its place any whim which might chance to flit through the minds or run in the emotions of uninstructed and unbridled jurors. No man in possession of ordinary faculties, familiar with the oscillating motion of cars, from frequent riding thereon, as was this deceased, need be notified that it is extremely dangerous to stand upon the platform at the end of a car without side-guards or railing, and he knows, without being told, that only in the emergency of there being no other place provided is standing in such a place even excusable while a train is moving 20 or 40 miles an hour.

The plaintiff contends that this train was short of brakemen; that the defendant should have provided one more brakeman. It is difficult to see how another brakeman could have prevented the accident, even if there had been another on the train. It is not part of the duties of a brakeman to prevent men from standing on the platforms of the cars, nor to catch them when they jump off or fall off; and this deceased had no right to expect that this defendant had provided for him such a body-guard. The duties of brakemen

are to stand at the front and rear ends of a moving train, as appears by the rules plaintiff offered in evidence. It is only where the injury can be reasonably traced to lack of sufficient help that such lack can be claimed as negligence. The same is true of the road-bed and rules of a railroad company.

The plaintiff contends that it should have been left to the jury to say whether the deceased heard the announcement in the car in rear of the smoker of "Shohola station." It would have been a great stretch of faith to believe, from the evidence, that he did hear such announcement, but, even if he did, we do not see how that could absolve him from the charge of negligence. He did not stand in the position of a stranger. It was light outside. He could see. He was familiar, from recent daily riding on this train to this station, with the fact that the train was accustomed to stop for passengers to alight. He knew the train had not arrived at the station, had not slackened its speed, even, and was running at a very rapid rate. Even if he had heard the announcement, he could not have interpreted it, in the light of his knowledge, to mean that he must at once thrust himself upon the unprotected end platform of the car. We are of opinion that no error was committed by the trial court during the trial, and that the dismissal of the complaint was proper.

Judgment should be affirmed, with costs.

MAYHAM, J., concurs.